**SO ORDERED.**

**SIGNED April 4, 2012.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA

IN RE:

SAMUEL F. LIPRIE,                              CASE NO. 10-21281

    Debtor                                 Chapter 7

----------------------------------------------------------------
DR. LEE ROY JOYNER, M.D.,

    Plaintiff

VERSUS                                         ADVERSARY NO. 11-02003

SAMUEL H. LIPRIE, S.F.L. & S.I.L,
L.L.C., DEUTSCHE BANK FLORIDA, N.A.,
SHAWN BRAY LIPRIE INTER VIVOS TRUST
NO. 1, WILMA D. LIPRIE, JON C.
LIPRIE & MARY L. RAHAIM,

    Defendants

----------------------------------------------------------------
### MEMORANDUM OPINION
----------------------------------------------------------------

    The present adversary proceeding is a pre-petition state court

proceeding that was removed after the debtor filed for relief under

Chapter 7 of the Bankruptcy Code. This case involves claims by Dr. Lee Roy Joyner, a creditor of the debtor, Samuel F. Liprie, against Liprie, Deutsche Bank Florida, N.A., and several non-debtor entities that Joyner contends received fraudulent conveyances: S.F.L. & S.I.L., L.L.C., Shawn Bray Liprie Inter Vivos Trust No. 1, Wilma D. Liprie, Jon C. Liprie, and Mary L. Rahaim. Joyner's complaint includes multiple claims brought under Louisiana state law. Defendants Deutsche Bank and S.F.L. & S.I.L. have filed motions to dismiss on the grounds that the claims asserted by Joyner are estate claims that may only be brought by the duly-appointed Chapter 7 trustee, Rudy O. Young. The court took the Motions to Dismiss under advisement following a hearing. After considering the parties' arguments, the record, and the relevant authorities, the court entered an order GRANTING the Motions to Dismiss. The following Memorandum Opinion explains the court's ruling with respect to the Motions to Dismiss.

## BACKGROUND

In 1994, Joyner and Liprie formed a joint venture to develop and market a heart catheterization system known as intra-coronary radiation therapy. (Amended Complaint at ¶ 3). Joyner is a pulmonologist and medical researcher, and Liprie was a nuclear pharmacist and inventor. (Amended Complaint at ¶ 3(A), 3(B)). The parties referred to their joint venture as Angiorad. Joyner and a

third business partner, Dr. Mark Harrison, funded the Angiorad joint venture. The joint venture ultimately produced a device that was successfully tested at a Venezuelan medical facility. The parties' business relationship, however, began to deteriorate in 1995. In early 1995, Liprie bought out Harrison's interest in the joint venture. Liprie also sought to buy out Joyner's 25% interest in the joint venture, but Joyner rejected the buy-out offer. In March 1995, Liprie attempted to expel Joyner from the Angiorad venture. Joyner then filed suit against Liprie in Louisiana state court on February 8, 1996, seeking his 25% share of the profits from the Angiorad joint venture. In that proceeding, Joyner asserted claims for fraud, breach of fiduciary duty, and breach of contract. Following a jury trial, the jury returned a verdict finding: (1) that Joyner had a 25% ownership interest in the Angiorad joint venture; (2) that Liprie defrauded Joyner out of his 25% share of the profits from the Angiorad joint venture; (3) that Liprie breached his fiduciary duties to Joyner; and (4) that Joyner was entitled to $4.3 million in money damages, legal interest, costs, and Joyner's attorney fees. (Amended Complaint at ¶ 5). The court entered judgment on the jury verdict on November 10, 2008 (hereinafter, "Liprie I"). The court's judgment in Liprie I was affirmed in <u>Joyner v. Liprie</u>, 33 So. 2d 242 (La. App. 2nd Cir. 2010), and the Louisiana Supreme Court denied writ.

On July 9, 2009, Joyner commenced the present proceeding in the 38th Judicial District Court for the Parish of Cameron, Louisiana, seeking to "recover converted property and civil fruits" from Liprie and the non-debtor defendants. According to Joyner, Liprie created a number of trusts and related entities, and then transferred his assets to those entities for little or no consideration in order to shield the proceeds from the Angiorad joint venture from Joyner's judgment in Liprie I. According to Joyner, Liprie formed a Texas limited partnership in May 2001. Liprie also formed two revocable Texas living trusts: S. F. Liprie Living Trust and S. I. Liprie Living Trust. (Amended Complaint at ¶ 18). Liprie and these two living trusts were the general partners of the Texas limited partnership. <u>Id</u>. Liprie and S. I. Liprie Living Trust each owned 1% of Texas limited partnership and the S. F. Liprie Living Trust owned 98%. (<u>Id</u>. at ¶ 18). Joyner alleges that, in January 2005, Liprie revoked the S. F. Liprie Living Trust, and that trust's 98% interest in Texas limited partnership reverted to Liprie. (Amended Complaint at ¶ 26). Liprie then formed a new entity, defendant S.F.L. & S.I.L., L.L.C., as a Louisiana limited liability company with Liprie as the 99% owner of the entity's membership units. (<u>Id</u>. at ¶ 29). Joyner alleges that the debtor subsequently transferred various assets into S.F.L. & S.I.L., including proceeds from the Angiorad joint

-4-

venture.  (<u>Id</u>. at ¶¶ 31-34).  Joyner also alleges that Liprie created the Shawn Bray Liprie Inter Vivos Trust No. 1 with his wife as the sole income beneficiary in March 2005, with defendant Deutsche Bank as the trustee.  According to Joyner, Liprie subsequently donated his 99% membership interest in S.F.L. & S.I.L. to this trust.

After the bankruptcy case was filed, the non-debtor defendants removed the present action from state court based on bankruptcy court jurisdiction.  Joyner has filed a motion to remand or to abstain which has been continued without date pending the court's determination of whether the claims asserted by Joyner are property of the bankruptcy estate.

## JURISDICTION

In his opposition to the Motions to Dismiss, Joyner questions whether this court has jurisdiction to enter final orders (including an order on the Motions to Dismiss) on the state law claims asserted in the Amended Complaint following the Supreme Court's recent decision in <u>Stern v. Marshall</u>, ___ U.S. ___, 131 S.Ct. 2594 (2011).  <u>Stern</u> addresses the constitutionality of 28 U.S.C. § 157(b)(2)(C).  Section 157(b)(2)(C) provides that counterclaims to proofs of claim are "core" matters in which a

bankruptcy court may enter final orders and judgments.[1] The "core" versus "non-core" distinction arose after the Supreme Court's decision in <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), which held that the broad grant of jurisdiction to bankruptcy judges under the Bankruptcy Reform Act of 1978 was unconstitutional. Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and determine all "core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." The Bankruptcy Code does not define "core proceeding," but section 157(b)(2) provides a non-exclusive list of proceedings that are deemed "core," including counterclaims to proofs of claim. A bankruptcy court cannot, however, enter final orders or judgments on non-core "related to" matters without the consent of the parties. 28 U.S.C. § 157(c)(2).[2] In <u>Stern</u>, the Court held that section 157(b)(2)(C) was unconstitutional to the

---

[1]    Section 157(b)(2)(C) provides: "core proceedings include ... counterclaims by the estate against persons filing claims against the estate ...."

[2]    Section 157(c)(2) provides that "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."

extent that it authorizes non-Article III bankruptcy judges to enter final orders and judgments on common law counterclaims to proofs of claim.

As a preliminary matter, as this court has previously held, _Stern_ does not implicate this court's *subject mater* jurisdiction under 28 U.S.C. § 1334, only its *authority* to enter final orders and judgments in certain matters. See In re American Intern. Refinery, 2012 WL 293005 (Bankr. W.D. La. January 31, 2012). The court also disagrees with Joyner's assertion that _Stern_ precludes entry of final orders and judgments in any matter that involves a state-law claim or issue. As the Supreme Court recognized in Butner v. U.S., 440 U.S. 48 (1979), state law undergirds many federal bankruptcy law determinations. Given the Supreme Court's assurance in _Stern_ that the court's ruling in that case was a narrow ruling that would not have a radical impact on current practice, the court declines to construe _Stern_ so broadly as to preclude this court from addressing the myriad core bankruptcy matters that may, nevertheless, require the court to address questions of state law.

In the present case, the Motions to Dismiss contend that the claims asserted by Joyner are estate claims that can be brought only by the Chapter 7 trustee. This case thus presents not only the question of whether the claims asserted by Joyner are property

of the bankruptcy estate under 11 U.S.C. § 541, but whether Joyner has standing to assert estate claims. This determination directly affects the Chapter 7 trustee's administration of the bankruptcy estate and is a core matter upon which the bankruptcy court may enter final orders and judgments. <u>See</u> 28 U.S.C. § 157(b)(2)(A). Joyner's reliance on the Seventh Circuit's decision in <u>In re Ortiz</u>, 665 F.3d 906 (7th Cir. 2011) does not change this result. In <u>Ortiz</u>, the Seventh Circuit addressed whether the bankruptcy court could enter final orders on the *merits* of the state law claims asserted by the debtor against a creditor. In contrast, here, the question before the court is whether the claims at issue are property of the estate. While the resolution of this question may require the court to refer to state law in order to determine whether the claims at issue are estate or creditor claims, the inquiry is ultimately a core matter governed by federal bankruptcy law. Nevertheless, should this proceeding be determined to be non-core, this Memorandum Opinion will serve as this court's report and recommendation to the district court under 11 U.S.C. § 157(c)(1).

In sum, the court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

**DISCUSSION**

**A. Rule 12(b)(6) Standard.**

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure provides that Rule 12(b)(6) of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 372 (5th Cir.2008) (quoting Twombly, 550 U.S. 544, 127 S.Ct. at 1974, 167 L.Ed.2d 929). A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly's plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." <u>Iqbal</u>, 129 S.Ct. at 1949(internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. (quotation marks, citations, and footnote omitted). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. <u>Sonnier v. State Farm Mutual Auto. Ins. Co.</u>, 509 F.3d 673, 675 (5th Cir. 2007); <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1999), <u>cert</u>. <u>denied</u>, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The pleadings include the complaint and any documents attached to it. <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000). The court may also consider documents that are attached to the motion to dismiss if the documents are specifically referenced in the complaint and are

"central" to the plaintiff's claim. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

**B. Principles Governing Whether a Claim is Property of the Estate Versus a Non-Estate Claim That May Be Asserted By an Individual Creditor.**

The property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad definition of estate property includes causes of action that the debtor could have asserted as of the commencement of the bankruptcy case. <u>See</u> <u>In re Educators Group Health Trust</u>, 25 F.3d 1281, 1284 (5th Cir. 1994); <u>In re Mortgage America Corp</u>., 714 F.2d 1266, 1274 (1983). The Chapter 7 trustee has exclusive standing to assert causes of action that belong to the estate. <u>In re Educators Group Health Trust</u>, 25 F.3d at 1284; <u>In re E. F. Hutton Southwest Properties II, Ltd</u>., 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989). However, a trustee does not have standing to bring claims that belong solely to creditors of the bankruptcy estate. <u>See</u> <u>Caplin v. Marine Midland Grace Trust Co</u>., 406 U.S. 416, 433-34 (1972). The distinction between estate claims and creditor claims is not always clear because the same underlying facts that may support an estate claim may also support a claim that belongs solely to a creditor of the estate. <u>See</u>, <u>e.g.</u>, <u>In re Seven Seas Petroleum, Inc</u>., 522 F.3d 575, 585 (5th Cir. 2008) (observing that "it is entirely possible for a bankruptcy estate and a creditor

-11-

to own separate claims against a third party arising out of the same general series of events and broad course of conduct."). Unfortunately, many of the cases that address this distinction fail to provide a useful framework for determining whether a claim belongs to the estate or solely to a creditor of the estate. Some courts ground their analysis on whether the claim at issue is a "personal" claim versus a claim that asserts a "generalized grievance" applicable to all of the estate's creditors. See, e.g., Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1342-43 (7th Cir. 1987); Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 463 (7th Cir. 1991). As other courts have observed, this formula "is not an illuminating usage." Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994); see also In re Seven Seas Petroleum, 522 F.3d at 588. The flaw in this formula is that it may lead a court to conclude that a cause of action is property of the estate merely because it is based on conduct that affected more than one creditor as opposed to a single creditor. Conduct that affects more than one creditor – such as fraudulent representations disseminated to multiple creditors – may give rise to non-estate claims that can be brought by those creditors. See In re Seven Seas, 522 F.3d at 586. Similarly, a claim may be property of the bankruptcy estate even if the estate only has a single large creditor. As the Fifth Circuit observed in Seven Seas, the terms

-12-

"personal claim" versus "general claim" is "best understood as descriptions to be applied after a claim has been analyzed to determine whether it is properly assertable by the debtor or creditor, and not as a substitute for the analysis itself." 522 F.3d at 588.

In Seven Seas, the Fifth Circuit eschewed the "personal" versus "general" approach taken by some courts in favor of an approach that focuses on whether the debtor could have raised a state-law claim at the commencement of the bankruptcy case. Id. at 584. According to Seven Seas, a court must focus on "the nature of the injury for which relief is sought," as well as the "the relationship between the debtor and the injury." Id. If the state-law claim at issue is grounded on a direct injury to a creditor that is independent of any injury to the debtor, it is not a claim that the debtor could have asserted at the commencement of the case and, accordingly, is not property of the bankruptcy estate. Id. at 586. On the other hand, if a claim "alleges only indirect harm to a creditor" that derives from a "direct" injury to the debtor, the claim is an estate claim that can only be asserted by the Chapter 7 trustee. Id. at 584. The court's application of these principles to the facts of Seven Seas is useful. The plaintiffs in Seven Seas held unsecured notes issued by the debtor. Prior to the plaintiffs' investment, the debtor hired a consulting firm to prepare oil and gas reserve

-13-

estimates that were incorporated into the debtor's SEC filings. These estimates proved to be inflated. The noteholders sued multiple defendants alleging negligent misrepresentation, aiding and abetting fraud, and violations of the Texas Securities Act. The noteholders alleged that they relied on the reserve estimates in deciding whether to invest in the unsecured notes, and that they were injured when these estimates proved to be misstated. The Fifth Circuit concluded that these claims "alleged more than an injury that is merely derivative of an injury to Seven Seas." Id., at 585. Specifically, to the extent that the noteholders suffered direct injury by relying on false or misleading statements, there was a direct injury to the noteholders "that was independent of any injury to Seven Seas." Id. Conversely, claims based on allegations that a third party breached its fiduciary duties to the debtor, or otherwise engaged in conduct that harmed the debtor, are estate claims because the debtor could have asserted those claims at the commencement of the case. See, e.g., In re Educators Group Health Trust, 25 F.3d at 1285. Any damage suffered by the debtor's creditors from that conduct would be merely derivative of the injury directly suffered by the debtor. In Seven Seas, the court distinguished the noteholders' fraud claims from claims brought by the bankruptcy trustee against third parties alleging that they breached their duties to the debtor and interfered with management's

-14-

fiduciary duties. While this conduct may have affected the debtor's noteholders indirectly, that injury was merely derivative of a direct injury to the debtor. Id.; see also Mortgage America Corp., 714 F.2d at 1276-77 (concluding that corporate denuding and corporate trust fund claims asserted by creditor were ultimately the debtor's claims and, hence, property of the bankruptcy estate even though the claims could have been asserted by a corporate creditor outside of bankruptcy under state law).

Apart from causes of actions that could have been brought by the debtor at the commencement of the case, a trustee also has exclusive standing over actions to recover estate property that is "not under the debtor's control by reason of a fraudulent transfer, for instance, or because of the existence of separate corporate entities that are a sham." Seven Seas, 522 F.3d at 589. The court acknowledged that such claims are usually asserted by corporate creditors outside of bankruptcy but, at the commencement of the case, are vested in the trustee because the claims seek to recover property of the estate. 11 U.S.C. § 548(a) provides a fraudulent transfer cause of action to a trustee under the Bankruptcy Code. Similarly, 11 U.S.C. § 544(b) gives the bankruptcy trustee exclusive standing to assert state-law avoidance claims that otherwise would be assertable by the debtor's creditors outside of bankruptcy. See In re Mortgage America Corp., 714 F.2d at 1275. The purpose for

providing the trustee with these powers is that the trustee acts "for the benefit of all creditors, not just those who win a race to judgment." Id.; see also Official Committee of Unsecured Creditors of Cybergenics v. Chinery, 330 F.3d 548, 568-69 (3rd Cir. 2003) ("The policy concern evident in Section 544(b) is the need to channel avoidance actions through the trustee, who acts as a gatekeeper and prevents independent avoidance actions by creditors that might prejudice the estate and rival creditors.") Accordingly, creditors do not have standing to assert claims that seek to recover fraudulent transfers.[3] See Hartford Underwriters Ins. Co. V. Union Planters Bank, N.A., 530 U.S. 1 (2000) (holding that a trustee has exclusive authority to bring an avoidance action and that a creditor has no independent right to bring such an action). Similarly, the Fifth Circuit has held that claims based on the alter ego doctrine and various veil-piercing theories are property of the estate assertable only by the trustee because they seek to augment the estate. See In re Schimmelpenninck, 183 F.3d 347, 360 (5th Cir. 1999) (holding that creditor's alter ego and "single business enterprise" claims against a subsidiary of the debtor were property

---

[3]Courts have held that under certain circumstances, creditors may seek derivative standing to assert claims that would otherwise be assertable only by the trustee. See Cybergenics, 330 F.3d at 568 (discussing standards for conferring derivative standing). As explained further below, however, derivative standing is not applicable in the present case because Joyner did not satisfy the prerequisites for derivative standing.

of the estate and thus subject to the automatic stay); <u>In re S. I.</u>
<u>Acquisition</u>, 817 F.2d 1142, 1150 (5th Cir. 1987).

**C.  Application of These Principles to Joyner's Claims**.

Joyner's Amended Complaint asserts solely state-law claims in
16 separate counts.[4]  In order to apply the principles identified by
the Fifth Circuit in <u>Seven Seas</u>, the court must examine the
underpinnings of each of Joyner's claims to identify the nature of
the injury asserted by Joyner and the relationship between that
injury and the debtor as well as any claim exclusively reserved to
the Chapter 7 trustee.  Whether or not a claim is estate property
is a question of law that may be decided "by reference to the facial
allegations in the complaint."  <u>In re Seven Seas</u>, 522 F. 3d at 583.

### 1.  Counts X and XV:  Revendicatory Action and Resulting and Constructive Trust

In Count X of the Amended Complaint, Joyner seeks to recover
profits from the Angiorad joint venture through a state-law
revendicatory action.  Joyner also seeks to impose a resulting or
constructive trust on the proceeds in Count XV of the Amended
Complaint.  Under Louisiana law, a revendicatory action "accords to
the owner of a corporeal moveable, and to one having a real right
in it, [an action] for the recovery of the movable in the hands of

---

[4]Count XVII of the Amended Complaint is merely a demand for
a jury trial.

-17-

any unauthorized person." A. N. Yiannopoulas, 2 La. Civ. L. Treatise, Property § 347 (4th ed.); <u>see</u> <u>also</u> <u>Dual Drilling Co. v. Mills Equipment Investments, Inc</u>., 721 So. 2d 853 (La. 1998). An essential element of a revendicatory action is that the plaintiff have an ownership interest in the property that he or she seeks to recover. <u>Id</u>. Joyner alleges that he has an ownership interest in the Angiorad proceeds allegedly transferred to the non-debtor defendants because these proceeds represent Joyner's share of the Angiorad profits that were stolen by Liprie. In this regard, Joyner points to the jury's verdict in Liprie I awarding Joyner damages on account of *inter alia*, Liprie's fraudulent conduct and breach of fiduciary duty. As a result, Joyner alleges that the assets transferred to the non-debtor defendants were his "stolen" property, and that this stolen property is not property of the estate recoverable by the trustee.

Based on the allegations of the Amended Complaint considered as a whole, Joyner has not pled any facts to support his contention that any of the assets transferred by the debtor to the non-debtor defendants are his property versus estate property under Section 541. The judgment entered by the state court in Liprie I stated:

> The jury, considering the law, evidence and argument of counsel, answered the Verdict Form propounded by the Court and found the defendant liable unto the plaintiff for breach of contract, breach of fiduciary duty and fraud and found damages

for plaintiff in the amount of $4,300,000.
. . .
IT IS ORDERED, ADJUDGED AND DECREED that the jury verdict be and is hereby made the judgment of this court and accordingly judgment is hereby rendered in favor plaintiff, Lee Roy Joyner, and against Samuel F. Liprie, in the amount of FOUR MILLION, THREE HUNDRED THOUSAND ($4,300,000) DOLLARS ....

(Attachment to Joyner Proof of Claim)  The court thus awarded Joyner a ***money judgment*** based on the jury's verdict with respect to fraud, breach of fiduciary duty, and breach of contract.  There is nothing in the court's judgment or the jury's verdict granting Joyner an ownership interest in any of the proceeds that Liprie allegedly transferred to the non-debtor defendants.[5] (Id.) This reveals the fatal flaw in Joyner's revindicatory action: a money judgment on a fraud or breach of fiduciary duty claim does not automatically give a prevailing party a direct ownership interest in the specific property that is the subject of the lawsuit.  Otherwise, a creditor with a claim based on even an unrecorded money judgment would be able to divest the estate of property to the detriment of similarly-situated creditors.[6]  Joyner's reliance on Schwegmann v. Schwegmann

---

[5] The jury did find that Joyner had a 25% ownership interest *in the joint venture*. However, the present action focuses on the transfer of proceeds from the joint venture, not a transfer of Joyner's ownership interest in Angiorad.

[6] Joyner recorded his Liprie I judgment in Ouachita, Calcasieu, and Cameron Parishes.  These filings support a secured claim with respect to immovable property in those parishes. However, a secured claim does not give Joyner an ownership interest directly in that property, much less an ownership

<u>Family Trust</u>, 51 So.3d 737 (La. App. 5th Cir. 2010) does not change that result. In <u>Schwegman</u>, the court allowed the plaintiff to assert claims on behalf of the trust estate, including a revendicatory action to recover trust funds allegedly converted by the defendant. This holding does not, however, change the gravamen of a revendicatory action: the recovery of property *in which the plaintiff has an ownership interest*. The Liprie I judgment made no such finding or declaration of an ownership interest with respect to any of the Angiorad proceeds allegedly transferred to the non-debtor defendants. In sum, any of the Angiorad proceeds transferred to the non-debtor defendants are subject to recovery by the trustee, and any recovered property would flow into the bankruptcy estate. 11 U.S.C. § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.")

Joyner's request to impose a resulting or constructive trust in Count XV of the Amended Complaint suffers from a similar flaw. Joyner contends that the Angiorad proceeds transferred to the non-debtor defendants are excluded from the bankruptcy estate under 11 U.S.C. §§ 541(a)and 541(b)(1) because he is entitled to a

---

interest in any  Angiorad proceeds that may have been transferred to the non-debtor defendants. The property subject to the security interest is still property of the estate.

constructive trust over those proceeds on account of Liprie's fraudulent conduct.[7] However, just as the Liprie I judgment did not create a direct ownership interest in any of Liprie's assests, Joyner did not obtain relief from any court imposing a constructive trust on any of the property in the possession of any of the defendants before the bankruptcy case was filed. This is fatal to Joyner's argument that this claim is not an estate claim. See In re Moore, 608 F.3d 253, 263 (5th Cir. 2010). In Moore, the court rejected the same argument advanced by Joyner on the grounds that a court had not recognized a constructive trust prior to the bankruptcy. Id.; see also In re Omegas Group, Inc., 16 F.3d 1443, 1449 (6th Cir. 1994) ("Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor."). As a result, the court held that the plaintiff's constructive trust remedy was "intertwined with the alter ego and fraudulent transfer claims" and, like these claims, "belongs to the estate." Id. In

---

[7] Section 541(b)(1) states: "Property of the estate does not include ... any power that the debtor may exercise solely for the benefit of an entity other than the debtor ...."

light of <u>Moore</u>, Joyner cannot rely on his constructive trust claim
to claim an ownership interest in property that is otherwise subject
to recovery by the Chapter 7 trustee as property of the estate under
section 541(a)(3).

## 2. Count XI: Revocatory Action

In Count XI, Joyner seeks to avoid Liprie's transfers of assets
to the non-debtor defendants through a revocatory action. The
Louisiana Civil Code provides than "[a]n obligee has a right to
annul an act of the obligor, or the result of a failure to act of
the obligor, made or effected after the right of the obligee arose,
that causes or increases the obligor's insolvency." La. Civ. Code
art. 2036.[8] The moving defendants contend that article 2036 is a
state-law avoidance provision that falls squarely within the
avoidance powers reserved to the trustee under 11 U.S.C. 544(b).

---

[8] Joyner styles Count IX as a revocatory action, but cites a
different Civil Code article in paragraph 115 of the complaint:
Louisiana Civil Code Article 2453. This article provides that
"when the ownership of a thing is the subject of litigation, the
sale of that thing during the pendency of the suit does not
affect the complainant's rights." To the extent that Joyner's
claim is that he had a property interest in Angiorad proceeds
transferred to the non-debtor defendants, and that his rights
with respect to those proceeds were not affected by the transfer,
these allegations do not support a claim for the same reasons
discussed with respect to Joyner's revendicatory action.
Specifically, any proceeds transferred from the debtor to any of
the non-debtor defendants would otherwise have been estate
property and are subject to an action by the trustee to recover
that property.

Section 544(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 550(a) outlines the trustee's remedies for a section 544(b) avoidance claim premised on state law:

> (a)    Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from –
>
> (1)    the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)    any immediate or mediate transferee of such initial transferee.

Thus, apart from recovering a fraudulent conveyance, the trustee can recover "the value of such property" from immediate and mediate transferees subject to the "single satisfaction" limitation of section 550(d). The trustee's avoidance power under section 544(b) is exclusive; individual creditors do not have standing to assert state-law avoidance claims that fall within the scope of section 544(b). Moore, 608 F.3d at 261 (section 544 claim based on state law avoidance provision is an estate claim "that only a trustee or

debtor in possession may pursue once a bankruptcy is under way.")
(quoting <u>Nat'l Tax Credit Partners, L.P. v. Havlik</u>, 20 F.3db 705,
708 (7th Cir. 1994)).[9]    Here, the Louisiana revocatory action
asserted by Joyner is based on a state law avoidance provision that
falls within the Chapter 7 trustee's avoidance powers under section
544(b).

Joyner argues that he is not barred from asserting a state-law
revocatory action for at least two reasons.  First, he argues that
the Count XI seeks damages, and that the trustee is precluded from
asserting a damages claim under section 544(b).  Second, Joyner
contends that he seeks only the return of "non-estate assets"
transferred to the non-debtor defendants.    Neither of these
arguments preserves Joyner's state law revocatory action.  With
respect to Joyner's prayer for money damages, Joyner is correct that
section 544(b) does not preclude a creditor from asserting that
creditor's personal state law damages claims because section
544(b)is generally limited to *avoidance* claims.  However, that is

---

[9] Joyner cites <u>In re Porras</u>, 312 B.R. 81 (Bankr. W.D. Tex.
2004) to suggest that state-law fraudulent conveyance claims are
not exclusive to the trustee.  <u>Porras</u> held that a state-law
fraudulent conveyance claim was not property of the bankruptcy
estate.  This position was explicitly rejected by the Fifth
Circuit in the <u>Moore</u> case.  Accordingly, Joyner cannot rely on <u>In
re Porras</u> to support an argument that his revocatory action is
not property of the bankruptcy estate and, therefore, that the
trustee does not have exclusive standing to bring that claim.

not what Joyner is doing with Count XI. This count is squarely grounded on a fraudulent conveyance theory when the allegations of the Amended Complaint are considered as a whole. (See, e.g., Amended Complaint at ¶¶ 25, 43-44,48,72,77,83,87, 90.) The Amended Complaint alleges that all of the non-debtor defendants received fraudulent conveyances in one form or another. (Id.) If so, the Chapter 7 trustee may avoid the transfers or even recover the *value* of the transfers from any of the immediate or mediate transferees for the benefit of the bankruptcy estate. The Amended Complaint simply does not allege a basis for damages to Joyner apart from what the trustee is entitled to recover for the estate under sections 544(b) and 550(a).

With respect to the request in paragraph 115 that the non-debtor defendants be ordered to "return any non-estate assets to Dr. Joyner," this allegation does support a right to relief for Joyner that is separate and independent from the Chapter 7 trustee's right to relief under section 544(b) and 550(a). Specifically, as the court ruled in connection with Joyner's revindicatory action, Joyner has not plead any facts to establish that he had a direct ownership interest in the assets transferred to the non-debtor defendants by Liprie. The Liprie I money judgment provides no such basis for an ownership interest. Accordingly, any transfers recoverable from the non-debtor defendants pursuant to a Louisiana revocatory action are

recoverable solely by the trustee for the benefit of the bankruptcy
estate.

### 3. Counts III and XII:  Simulation, Related <u>Guillot</u> Claims, and Nullity

In Count III of the Amended Complaint, Joyner alleges that
Liprie's transfer of assets to S.F.L. & S.I.L. and related trusts
were sham transactions subject to nullification under <u>In re Guillot</u>,
250 B.R. 570 (Bankr. M.D. La. 2003).  In <u>Guillot</u>, the bankruptcy
court relied on 11 U.S.C. § 544(a) in holding that a Chapter 7
trustee could challenge the donation of immovable property to a
trust on the grounds that the transaction was an absolute nullity
under Louisiana law because of a lack of denotive intent.  Although
the Amended Complaint attempts to frame this claim as a state-law
damages claim, the allegations in the Amended Complaint clearly show
that at its core, this claim seeks to avoid a fraudulent conveyance.
Specifically, paragraph 98 of the Amended Complaint states that "the
sham transaction should be nullified and the non-estate proceeds
ordered returned to Dr. Joyner as being absolutely null or
relatively null simulations, plus pay damages, interest, costs,
civil fruits and attorneys fees their conduct caused Dr. Joyner."
(Amended Complaint at ¶ 98). Although the allegation refers to "non-
estate proceeds," as the court previously concluded with respect to
the revendicatory action claim, Joyner has not plead a basis for a

direct ownership interest in any of the property transferred to the non-debtor defendants. Furthermore, paragraph 87, which specifically references <u>Guillot</u>, clearly frames Joyner's claim as an avoidance claim in alleging that "a debtor's sham donation to trusts or other enterprises set up by debtor's attorney seven years before filing bankruptcy constitutes an ***avoidable simulation*** which has no affect upon the creditors of the donor." (Amended Complaint at ¶ 87) (emphasis added). This is an estate claim that can be brought only by the trustee. Joyner's nullifiaction claim in Count XII similarly fails because it seeks to recover what essentially are fraudulent conveyances. In sum, Counts III and XII seek relief that is reserved to the Chapter 7 trustee under sections 544 and 550.

### 4. Count IV: Aiding and Abetting Fraud

In Count IV, Joyner alleges that the non-debtor defendants conspired to aid Liprie's fraudulent conduct towards Joyner. A creditor's fraud claim is a prototypical non-estate claim because the claim is typically grounded on a direct injury to the creditor that is not derivative of any injury to the debtor. <u>See</u> <u>In re Seven Seas</u>, 522 F.3d at 586 ("if [the defendant] knew that the reserve estimates were false and used them to induce the  bondholders to purchase or refrain from selling the unsecured notes, then there was a direct injury to the bondholders that was independent of any

injury to <u>Seven Seas</u>.”); <u>see also</u> <u>Educators Group Health Trust</u>, 25 F.3d at 1285 (creditor suffered direct injury from reliance on materially false statements).  By extension, a claim that a defendant aided and abetted or conspired with another party to commit fraud is a direct claim of the creditor that falls outside a trustee’s exclusive standing to pursue estate claims.  Count IV is not, however, based on a direct injury to Joyner resulting from fraud.  Rather, like Joyner’s other claims, it is grounded on alleged fraudulent conveyances recoverable solely by the trustee for the benefit of the estate under section 544(b) and 550(a). Specifically, Joyner alleges that:

- “After debtor defrauded Dr. Joyner, debtor created, then conspired with, non-debtor defendants to intentionally, willfully, and fraudulently aid and abet debtor’s continuous placement of Dr. Joyner’s assets out of his reach.”

- “Dr. Joyner seeks recision of the fraudulent transfer of the Angiorad proceeds to the non-debtor defendants, with the non-estate assets held by the non-debtor defendants being transferred to Dr. Joyner....”

(Amended Complaint at ¶¶ 100, 101).  To the extent that Joyner is alleging that the non-debtor defendants aided and abetted or otherwise conspired to aid a fraudulent conveyance, that claim is an estate claim according to the Fifth Circuit . See <u>In re Educators Health Group Trust</u>, 25 F.3d at 1285. (conspiracy to aid fraudulent

conveyance was an estate claim).[10]  Louisiana law does not recognize

a distinct claim for aiding and abetting or conspiracy that is

independent from the underlying tort claim.  See Aranyoski v.

Delchamps, Inc., 739 So.2d 911, 917(La. App. 1st Cir. 1999).  Here,

that underlying claim is a fraudulent conveyance claim that is

property of the estate under Fifth Circuit precedent.  In sum, the

Amended Complaint simply does not allege a basis for damages

resulting from a direct injury to Joyner that is separate and

independent from the trustee's claims under sections 544 and 550.

_____

[10] The court notes that in an unpublished Fifth Circuit
opinion, In re Bradley, 326 Fed. Appx. 838, 2009 WL 1687793 (5th
Cir. June 16, 2009), a panel of the Fifth Circuit concluded that
a claim alleging that the defendant conspired to aid in a
fraudulent transfer was a non-estate claim that could only be
brought by the affected creditor.  The Bradley case does not
alter the court's analysis of Joyner's aiding and abetting fraud
claim for two reasons.  First, the unpublished Bradley decision
is not binding to the extent that it conflicts with the Fifth
Circuit's published decision in In re Educators Health Group
Trust, 25 F.3d at 1285.  In that case, the court held that a
claim for conspiracy to aid fraudulent conveyances was a claim
that belongs solely to the estate.  Id.  Second, unlike in the
present case, it is not clear whether there were any allegations
in Bradley that the non-debtor defendants who allegedly conspired
to aid in the fraudulent transfer would be considered "immediate
or mediate transferees" subject to liability under Section
550(a).  Accordingly, the plaintiff in Bradley may well have been
able to plead damages separate and apart from the trustee's
rights under section 550.  In the present case, however, Joyner
alleges transfers to each of the non-debtor defendants that may
support a claim by the Chapter 7 trustee to recover either the
property transferred or the value of that property from the
transferees.  In sum, unlike Bradley, Joyner has not pled an
independent claim for relief that falls outside the scope of the
Chapter 7 estate.

### 5. Count V: Aiding and Abetting Breach of Fiduciary Duty

In Count V, Joyner alleges that the non-debtor defendants aided and abetted Liprie's breach of fiduciary duties to Joyner. Joyner points to the jury findings and judgment in Liprie I, which establish that Liprie had a fiduciary duty arising from his participation in the Angiorad joint venture and that Liprie breached those duties by failing to turn over Joyner's share of the profits from the venture. Joyner also alleges that Liprie further breached those duties by creating various trusts and transferring the proceeds from the Angiorad joint venture to those trusts without consideration. (Amended Complaint at ¶ 104). The Amended Complaint alleges that the non-debtor defendants aided and abetted Liprie's breach of his fiduciary duties with respect to the alleged fraudulent conveyances to the non-debtor defendants. A claim for the breach of a fiduciary duty owed to the debtor is an estate claim. On the other hand, a claim for the breach of a fiduciary duty owed directly to a creditor is the property of that creditor, not the estate. Similarly, any claim for aiding and abetting the breach of a fiduciary duty owed to a creditor is a non-estate claim. The Amended Complaint alleges at several points that the non-debtor defendants owed a fiduciary duty directly to Joyner. (<u>See</u>, <u>e.g.</u>, Amended Complaint at ¶¶ 54, 104). However, the Amended Complaint grounds Count V, not on that fiduciary duty, but on the non-debtor defendants' liability for fraudulent conveyances:

- "After debtor breached his fiduciary duties to Dr. Joyner by intentionally defrauding him of his Angiorad profits, debtor again breached his fiduciary duties by creating, and then concealing the Angiorad profits into a series of enterprise, including non-debtor defendants."

- "The non-debtor defendants, by taking control of the Angiorad proceeds in bad faith and for no consideration, part of which were Dr. Joyner's share of the Angiorad proceeds, and by non-debtor defendants refusing to either disclose their taking or return Dr. Joyner's share, intentionally and willfully conspired with debtor to aid and abet an intentional breach of fiduciary duties owed Dr. Joyner."

(Amended Complaint ¶¶ 103, 104). If Joyner can plead the grounds for a fiduciary duty between himself and the non-debtor defendants separate and apart from the Chapter 7 trustee's rights and remedies under section 550(a), he may have standing to assert that claim. The Amended Complaint, however, merely states in a conclusory fashion that there was a fiduciary duty without pleading sufficient factual content to allow the court to draw a reasonable inference that a fiduciary relationship existed between the non-debtor defendants and Joyner. See Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245-46 (5th Cir. 2010) ("while legal conclusions may provide the framework for a complaint, they must be supported by factual allegations demonstrating the plausibility of the plaintiff's 'entitled to relief'") In sum, Count V seeks to assert a claim that is reserved to the Chapter 7 trustee.

### 6. Count VI: Aiding and Abetting Conversion

With respect to Count VI of the Amended Complaint, Joyner asserts a claim that the non-debtor defendants aided and abetted

Liprie's conversion of Joyner's Property. As with Joyner's revendicatory action claim in Count X of the Amended Complaint, this claim is grounded on Joyner's allegation that the assets transferred by Liprie to the non-debtor defendants were his property. As the court ruled with respect to the revendicatory action, the Amended Complaint alleges no grounds for Joyner's contention that he had a direct ownership interest in any specific assets transferred to the non-debtor defendants. To the contrary, any recovery of those assets would be for the benefit of the *estate* not Joyner. Accordingly, Joyner has not stated a conversion claim, much less an aiding and abetting conversion claim with respect to those fraudulent transfers, that is separate and independent from the estate's claims.

### 7. Counts I and II: Single Business Enterprise and Alter Ego

In Counts I and II, Joyner alleges that the debtor and the non-debtor defendants were a "single business enterprise" and that the non-debtor defendants were alter egos of the debtor. Like Joyner's other claims, these claims are grounded in alleged fraudulent transfers, the recovery of which are reserved of the Chapter 7 trustee:

> After fraudulently taking Dr. Joyner's share of the Angiorad profits, debtor and his professionals created a series of trusts, entities, and other enterprise. Thereafter,

-32-

> debtor transferred in bad faith and for no
> consideration control of the Angiorad proceeds
> into these enterprises to prevent Dr. Joyner
> from reaching them. The transactions left
> debtor insolvent and thus were apparently
> fraudulent.

(Amended Complaint at ¶ 91). Some courts have held that veil-piercing and alter ego claims are not property of the bankruptcy estate and may be pursued by individual creditors. See, e.g., In re Ozark Restaurant Equipment Co., 816 F.2d 1222, 1225 (8th Cir. 1987). The Fifth Circuit, however, has squarely held that such claims are property of the estate and may only be brought by the Chapter 7 trustee. See In re Seven Seas Petroleum, 522 F.3d at 589 (claims that "ultimately seek to recover assets of the estate that are not under the debtor's control by reason of a fraudulent transfer, for instance, or because of the existence of separate corporate entities that are a sham" are "vested exclusively in the trustee in bankruptcy."); see also In re Schimmelpenninck, 183 F.3d at 360; In re S.I. Acquisition, 817 F.2d at 1150. Accordingly, Joyner does not have standing to bring the claims asserted in Counts I and II.

## 8. Count VII: Management of Affairs of Another

In Count VII, Joyner alleges that the non-debtor defendants are liable under Louisiana Civil Code article 2295 to the extent that they managed Joyner's assets without authority. Article 2295

provides that a "manager must exercise the care of a prudent administrator and is answerable for any loss that results from his failure to do so." To the extent that Joyner is alleging that the non-debtor defendants are liable for mismanaging his assets under article 2295, the claim is dependent on Joyner's allegation that the Angiorad proceeds transferred to the non-debtor defendants were his property. As explained above, the Amended Complaint does not support his claim that he had a direct ownership interest in the Angiorad proceeds based on the Liprie I judgment. Rather, the estate has an interest in those proceeds to the extent that the trustee has grounds to avoid and recover the transfers (or their value) for the benefit of the bankruptcy estate. Accordingly, any duties owed by the non-debtor defendants with respect to estate property (or transfers that are recoverable by the estate) are not duties that can be enforced by Joyner.

### 9. Counts VIII and IX: Quasi-Contract, Reimbursement and Unjust Enrichment

In Counts VIII and IX, Joyner asserts quasi-contract and unjust enrichment claims. Like Joyner's other claims, these claims are based on the recovery of fraudulent conveyances and seek the remedies afforded to the Chapter 7 trustee under sections 544(b) and 550(a). Specifically, the Amended Complaint alleges:

- "After debtor defrauded Dr. Joyner out of his $4.3 million profit in Angiorad, debtor improperly transferred control of

-34-

Angiorad proceeds to a series of newly created entities or enterprises, including to non-debtor defendants."

- "Debtor's transfers to these enterprises were fraudulent and in bad faith."

- "The non-debtor defendants are liable to Dr. Joyner as a result and should be required to disgorge their unjust gains and return any non-estate assets to Dr. Joyner, plus pay all damages their wrongful conduct caused to Dr. Joyner...."

(Amended Complaint at ¶¶ 109, 110, and 113). These allegations do not support a separate and independent claim for an injury to Joyner that is not derivative of the estate's claims under sections 544 and 550, as well as the estate's claims under the alter ego and single business enterprise doctrines.

### 10. Count XIII: Louisiana Racketeering Act

Joyner asserts a state law racketeering claim under La. R.S. 15:1352 against Liprie and the non-debtor defendants in Count XIII of the Amended Complaint. La. R.S. 15:1352(A) provides:

> "Racketeering activity" means committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime which is punishable under the following provisions of Title 14 of the Louisiana Revised Statutes of 1950 or the Uniform Controlled Dangerous Substances Law, or the Louisiana Securities Law....

The provision then lists 29 "predicate" offenses that support a racketeering claim. Joyner asserts a predicate offense of theft under La. R.S. 14:67, which states:

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of

-35-

> fraudulent conduct, practices, or representations. An intent
> to deprive the other permanently of whatever may be the
> subject of the misappropriation or taking is essential.

The Amended Complaint alleges that Liprie's "intentional, permanent taking and/or misappropriation" of Joyner's share of the Angiorad joint venture profits constitutes theft under La. R.S. 14:67 and "racketeering activity" under La. R.S. 15:1352. Joyner further alleges that the non-debtor defendants engaged in racketeering activity under La. R.S. 15:1352 "by knowingly receiving proceeds derived, directly or indirectly, from Liprie's pattern of racketeering activity to use an invest directly and indirectly part or all of the proceeds [of the Angiorad joint venture], and the proceeds derived from the investment or use thereof, in acquisition of such immovables as a hotel in Colorado, land in Cameron Parish, a hangar in Calcasieu Parish, houses in Connecticut and Louisiana, and the establishment and operation of enterprises such as [S.F.L. & S.I.L] ...."

Count XV suffers from at least three fatal flaws, each of which requires dismissal. First, with respect to the allegations that Liprie defrauded Joyner of his share of the profits from the Angiorad joint venture, this is not an estate claim to the extent that it is a claim against Liprie. However the factual basis for this claim arises from the same transactions or series of transactions underlying Liprie I and, therefore, is barred by res

-36-

judicata.  In other words, this is a claim that was litigated or could have been litigated in Liprie I. La. R.S. 13:4331; In re Wells, 368 B.R. 506, 510 (Bankr. M.D. La. 2006).  Second, with respect to the allegations involving the non-debtor defendants, Joyner's claim is grounded on his claim that he had an ownership interest in the Angiorad proceeds transferred by Liprie to the various non-debtor defendants.  As the court previously noted, the Amended Complaint does not support such an ownership interest.  To the contrary, if recovered by the trustee, the recovered property constitutes property of the bankruptcy estate under 11 U.S.C. § 541(a)(3).  Third, the racketeering allegations against the non-debtor defendants are squarely grounded on fraudulent conveyance allegations, and thus are merely derivative of the trustee's rights and remedies under sections 544(b) and 550(a) and the estate's claims under the alter ego and single business enterprise doctrines.

### 12. Counts XIV and XVI:  Accounting and Injunctive Relief

Joyner's request for an accounting and injunctive relief is derivative of his substantive claims discussed above.  Since he lacks standing to assert those claims, the relief requested in Counts XIV and XVI must be denied.

### D.  Joyner's Standing

Given the court's analysis of Joyner's claims, Joyner lacks standing to assert the claims currently pled in the Amended

Complaint because these claims are not separate and independent from estate claims exclusive to the Chapter 7 trustee. However, Joyner also argues that, even if his claims are estate claims, the Chapter 7 trustee's standing to assert those claims is not exclusive. The arguments and authorities relied on by Joyner do not support his standing arguments. First, as with any general rule, the rule that the trustee has exclusive standing to assert estate claims or state-law avoidance claims under section 544 has exceptions. For example, the Fifth Circuit has held that a section 544 avoidance action is property of the estate that may be sold under 11 U.S.C. § 363. <u>See In re Moore</u>, 608 F.3d 253, 261-262 (5th Cir. 2010). Moreover, under some circumstances, a creditor may seek derivative standing to assert estate claims that have not been pursued by the trustee. <u>See</u> <u>Cybergenics</u>, 330 F.3d at 561 (discussing standards for creditor derivative standing); <u>Louisiana World Exposition v. Federal Insurance Co.</u>, 858 F.2d 233, 247 (5th Cir. 1988); <u>In re Cooper</u>, 405 B.R. 801 (Bankr. N.D. Tex. 2009).[11] Neither exception applies in this case. The trustee has not sold his section 544 avoidance

---

[11] <u>Cooper</u> distinguishes between derivative standing in the Chapter 11 context versus the Chapter 7 context, and sounds a cautionary note with respect to derivative standing in Chapter 7 cases. 405 B.R. at 812-13 (reasoning that derivative standing "should be viewed very differently in the Chapter 7 arena" because of the presence of the trustee and the trustee's gate-keeping role with respect to the estate).

claims to Joyner. Joyner also has not satisfied the requirements for derivative standing. Derivative standing requires that (1) the creditor's claim be "colorable," (2) that the trustee unjustifiably refuses to pursue the claim, and (3) that the creditor obtain leave from the court to pursue the claim. <u>Louisiana World Exposition</u>, 858 F.2d at 247. Joyner has not satisfied all three of these requirements for derivative standing.

Joyner alternatively argues that he has standing to assert this claim because the trustee lacks standing under <u>Shearson, Lehman, Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118 (2nd Cir. 1991). In <u>Wagoner</u>, the trustee filed an adversary proceeding against the debtor's former broker alleging that the broker had improperly churned the debtor's account prior to the commencement of the bankruptcy case and conspired with the debtor's former management to defraud the debtor. The Second Circuit held that the trustee did not have standing to assert the fraud claim because that claim was based on the misconduct of the debtor's managers that was imputed to the corporation. <u>Id</u>. At its core, the <u>Wagoner</u> rule is the traditional *in pari delicto* defense re-packaged as a rule of Article III standing. <u>Wagoner</u> has not been expressly adopted by the Fifth Circuit, and courts outside the Second Circuit have been reluctant to extend the <u>Wagoner</u> rule beyond the specific factual contours of that case. <u>See</u>, <u>e.g.</u>, <u>In re Senior Cottages of Am., LLC</u>, 482 F.3d

-39-

997, 1003 (8th Cir. 2007). Nevertheless, Joyner's reliance on _Wagoner_ is misplaced. In _Wagoner_, the claims at issue were not based on allegations of fraudulent conveyances. Courts have expressly rejected the application of the _Wagoner_ rule to avoidance claims brought by the trustee. _See_ _In re Madoff_, 2012 WL990829 at *12 (S.D.N.Y. March 26, 2012) (noting that "the _Wagoner_ Rule does not...apply to causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in possession" including actions under 11 U.S.C. § 544); _In re Park South Securities, LLC_, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005). In sum, Joyner does not have standing to assert estate claims or the trustee's rights and remedies under sections 544 and 550.

### E. Other Grounds for Dismissal

The Motions to Dismiss also allege alternative grounds for dismissal, including prescription and failure to comply with the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. In light of the court's ruling with respect to standing, the court need not address these arguments.

### F. Leave to Re-plead and Intervention

Ordinarily, the court will grant leave to re-plead following a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The reason for granting leave to amend is that, in most

cases, the dismissal is a result of pleading defects and leave is granted to allow the plaintiff an additional opportunity to state a claim that is entitled to relief. Here, however, the dismissal is based on lack of standing. Leave to amend is generally not allowed where an amendment would be futile. <u>City of Clinton, Ark. v. Pilgrim's Pride Corp.</u>, 632 F.3d 148, 152 (5th Cir. 2010). Joyner cannot cure the standing problem with respect to his authority to pursue estate claims. On the other hand, as the court noted in discussing Joyner's individual claims, he may be able to state non-estate claims if his complaint is re-pleaded to allege direct damages to Joyner that are not derivative of fraudulent conveyance, alter ego, piercing the corporate veil, and single business enterprise claims that are reserved to the Chapter 7 trustee. For example, several of the allegations in the Amended Complaint suggest that the non-debtor defendants owed independent fiduciary duties directly to Joyner. Joyner, however, frames his claim as an *aiding and abetting* breach of fiduciary duty claim based on Liprie's alleged fraudulent conveyances. Since the parties have not addressed leave to re-plead in light of the court's rulings on the Motions to Dismiss, the court will re-set this matter for a status conference to address Joyner's right to re-plead. At that time, the court will also address whether the Chapter 7 trustee should be allowed leave to intervene in order to protect the estate's interest in estate claims.

**CONCLUSION**

For the reasons set forth above, the court GRANTS the Motions to Dismiss on the grounds that Joyner lacks standing to assert the claims in the Amended Complaint.  A separate order in conformity with the foregoing reasons has already been entered into the record of this proceeding.

###